IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


JUSTIN GOTTFRIED,

     Plaintiff,                                                    No. 6:26-cv-00225-AP

v.                                                              **OPINION & ORDER**

OREGON DEPARTMENT OF
HUMAN SERVICES, et al.

     Defendants.

AIKEN, District Judge.

This case comes before the Court on a Findings and Recommendation ("F&R") filed by Magistrate Judge Amy Potter.  ECF No. 6.  Judge Potter recommends that the Complaint be dismissed without leave to amend.

Under the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress,

in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Although no review is required in the absence of objections, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte . . .* under a *de novo* or any other standard." *Id.* at 154. The Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the court should review the recommendation for "clear error on the face of the record."

In this case, Plaintiff did not file timely Objections to the F&R but instead filed an Amended Complaint. ECF No. 8. Plaintiff subsequently filed late Objections, ECF No. 10, that, in addition to being untimely, failed to substantively address the issues raised by Judge Potter in the F&R. The Court has reviewed the Objections and finds no error in Judge Potter's F&R. However, as discussed below, the filing of the Amended Complaint effectively moots the F&R and so the Court will address the Amended Complaint directly.

The Amended Complaint substantially changes the claims being asserted and the Defendants against whom the case is brought. The standards for assessing the Amended Complaint as part of the IFP process are laid out in the F&R and are adopted here.

As Judge Potter explains in the F&R, the original Complaint concerned an email to Plaintiff's attorney from Defendant Bill Palmer inquiring about the nature of Plaintiff's claimed disability and offering to meet to discuss accommodations. Plaintiff alleged that this was a violation of the Americans with Disabilities Act

("ADA") and the Rehabilitation Act.  Plaintiff also brought claims for violation of his substantive and procedural due process rights in connection with the placement of Plaintiff's children into the care of the Oregon Department of Human Services ("DHS").  Plaintiff also brought a claim for intentional infliction of emotional distress. As noted, Judge Potter recommends that these claims be dismissed without leave to amend.

In the Amended Complaint, Plaintiff alleges that Defendants have violated his rights by requiring him to communicate via email; by trespassing him from DHS properties; and by denying him access to records.  Plaintiff brings claims for (1) ADA discrimination; (2) violation of the Rehabilitation Act; (3) First Amendment retaliation; (4) violation of his Fourteenth Amendment due process rights; and (5) violation of his Fourteenth Amendment equal protection rights.

This is not the first time Plaintiff has attempted to bring these claims.  In *Gottfried v. St. Vincent De Paul et al.*, Case No. 6:25-cv-01827-AP, Plaintiff sought to litigate, among other things, his trespass from DHS properties; violation of his First Amendment Rights; violation of his Fourteenth Amendment rights to procedural and substantive due process; violation of his Fourteenth Amendment equal protection rights, and violation of the ADA and Rehabilitation Act against many of the same Defendants as in the present action—DHS, Bill Palmer, and Daniel Delgado.  Like the Amended Complaint in this case, the various pleadings in Case No. 6:25-cv-01827-AP alleged that DHS employees retaliated against Plaintiff for his protected speech; failed to provide him with disability accommodations needed to access DHS

services; and deprived him of his fundamental liberty interests without due process. *Compare* Am. Compl., ECF No. 8, and Fourth Amended Complaint in Case No. 6:25-cv-01827-AP, ECF No. 32. After multiple opportunities to amend, Case No. 6:25-cv-01827-AP was dismissed with prejudice on June 5, 2026. The Amended Complaint in this case was filed three days later, on June 8, 2026.

The dismissal of Plaintiff's claims with prejudice in Case No. 6:25-cv-01827-AP was not an invitation for Plaintiff to replead those claims in the present case. Dismissal with prejudice means that those claims *cannot* be brought again.

## I.    Timeliness

To the extent that Plaintiff's claims in the Amended Complaint are distinct from his claims in Case No. 6:25-cv-01827-AP, they suffer from additional defects. The first is timeliness. Plaintiff claims that the "email exclusion" placing a "restriction of access" on his DHS filed was imposed on May 29, 2024. This "email exclusion" is presented as the basis for Plaintiff's claim for violation of his due process rights. Am. Compl. ¶ 39 ("The Due Process violation began on May 29, 2024, when Defendants first excluded Plaintiff from all ODHS properties without notice, hearing, or opportunity to contest . . . The December 30, 2025 formal trespass was a continuation of the same constitutional exclusion, not a new deprivation."). The email exclusion is also identified as the basis for Plaintiff's First Amendment retaliation claim. *Id.* ¶ 45.

 "Oregon's two-year statute of limitation for personal injury actions applies to actions under 42 U.S.C. § 1983." *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th

Cir. 1989). The "blanket exclusion" allegedly occurred on May 29, 2024, and he alleges these exclusions for the first time in the Amended Complaint filed on June 8, 2026, which is more than two years after the complained-of action. Unless the claims relate back to the original Complaint, they are time barred.

When assessing relation back where, as here, the limitation period is derived from state law, the court must consider both federal and state law and employ whichever has the more permissive relation back standard. *McKenzie v. Portland Police Division*, Case No. 3:22-cv-01140-SB, 2023 WL 10354245, at *2 (D. Or. Sept. 1, 2023).

Federal Rule of Civil Procedure 15(c) provides that an amendment relates back to the date of the original pleading when (a) the law the provides that applicable statute of limitation allows relation back; (b) the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading,"; or (c) the amendment changes the naming of a party against whom a claim is asserted if certain conditions are met. Fed. R. Civ. P. 15(c)(1). Similarly, Oregon Rule of Civil Procedure 23C provides that

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment.

Or. R. Civ. P. 23C.

Under both the state and federal standards, the claim in the amended pleading must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Here, the claims in the original Complaint concerned a January 2026 email between Bill Palmer and Plaintiff's attorney about accommodations for Plaintiff's PTSD, as well allegations that Defendants had violated Plaintiff's due process rights by taking his children into DHS custody. These claims are entirely abandoned in the Amended Complaint in favor of claims concerning the "blanket exclusion" of Plaintiff from DHS property and the requirement that he communicate with DHS by email. These are not the same claims and they do not arise from the same conduct, transactions, or occurrences that gave rise to the claims in the original complaint— the January 2026 email is not mentioned in the Amended Complaint and Plaintiff affirmatively disclaims that he bases his new Fourteenth Amendment claims on the custody of his children. The claims do not relate back.

The Court concludes that Plaintiff's claims arising from his May 29, 2024, "blanket exclusion" are time-barred and must be dismissed.

## II. First Amendment Retaliation

"To prevail on a First Amendment retaliation claim, Plaintiffs must show that: (1) they were engage in constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected

activity; and (3) the protected activity was a substantial or motivating factor in the Defendant's conduct." *Dickinson v. Trump*, 818 F. Supp.3d 1209, 1220 (D. Or. 2026).

Here, the Amended Complaint alleges that the initial restriction of access was imposed because he requested temporary shelter assistance on May 29, 2024. Am. Compl. ¶ 44. This allegation is plainly contradicted by Exhibit B, which "remind[s]" Plaintiff on May 29, 2024, that he is under a restriction of access after he sent his email to individual DHS employees, rather than to the DHS services email address as required by his restriction of access. Am. Compl. Ex. B; Am. Compl. ¶ 21. Plaintiff was also asked to review his "Restriction of Access Letter." Am. Compl. Ex. B. If Plaintiff was under a restriction of access before he requested shelter assistance, then the request for shelter assistance cannot have been the cause of the restriction as alleged in the Amended Complaint.

In addition, Plaintiff alleges that the exclusion was caused by Plaintiff filing complaints and lawsuits. Am. Compl. ¶¶ 32-34. Plaintiff alleges that he filed his complaints beginning in November 2024 and January 2025. *Id.* ¶ 32. However, the blanket exclusion is alleged to have commenced six months earlier on May 29, 2024. *Id.* ¶ 27. The exclusion cannot have been caused by Plaintiff's complaints, which were not made until after the exclusion was put in place.

The Court concludes that, in addition to the timeliness issues already discussed, Plaintiff has not plausibly alleged a claim for First Amendment retaliation.

### III.    Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similar situated should be treated alike." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (internal quotation marks and citation omitted). "To state a claim under . . . § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021) (internal quotation marks and citation omitted).

"As the Supreme Court has recognized, 'an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called class of one.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122-23 (9th Cir. 2022) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008)). To state a "class-of-one equal protection claim, the [plaintiff] must allege facts showing that that they have been '(1) intentionally, (2) treated differently from other similarly situated and that (3) there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, the Amended Complaint does not allege that Plaintiff is a member of a protected class. *See Imamoto v. City and Cnty. of Honolulu*, Case No. 25-cv-00308-DKW-WRP, 2025 WL 2659884, at *1 (D. Hawaii Sept. 16, 2025) ("[T]he disabled do

not constitute a suspect class for equal protection purposes." (internal quotation marks and citation omitted)). And the Amended Complaint only alleges in the most conclusory terms that he was treated differently from others and it further alleges that he was treated differently from individuals who were *not* similarly situated. Am. Compl. ¶ 49. The Court concludes that Plaintiff has failed to state an equal protection claim.

## IV.    ADA & Rehabilitation Act

The ADA was enacted to prevent discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1) & (2). It specifically provides that no one shall be denied the benefits provided by a public entity by reason of their disability. 42 U.S.C. § 12132. The Rehabilitation Act similarly protects individuals from being denied access to a program or activity receiving federal benefits because of their disability. 29 U.S.C. § 794.

To establish a violation of Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Similarly, to demonstrate a violation of the Rehabilitation Act, a plaintiff must show "(1) he is an individual with a disability; (2) he is otherwise qualified to receive benefits; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal

financial assistance." *Id.* Because claims under the ADA and the Rehabilitation Act are substantially similar, courts use the same analysis for both claims. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

Here, Plaintiff alleges that he has a "pragmatic communication disorder" and autism, which "impairs the social use of language—nonverbal cues, conversational turn-taking, contextual interpretation." Am. Comp. ¶ 24.[1] Plaintiff is required to communicate with DHS via email, which he claims violates the ADA and Rehabilitation Act because "[e]mail removes nonverbal cues, tone, and real-time feedback essential to meaningful communication." *Id.* ¶ 25. Nonverbal cues are, however, the very thing Plaintiff alleges that he is unable to fully interpret as a result of his disability. *Id.* ¶ 24. It is not clear how the alleged restriction to email communication is inconsistent with Plaintiff's alleged disability or would interfere with Plaintiff's access to services.

Nor is it clear that the restriction to email communication is a consequence of Plaintiff's pragmatic communication disorder or autism. Exhibit A to the Amended Complaint shows that Plaintiff is restricted to email communication and includes the restriction as part of a warning that Plaintiff is trespassed from DHS property and that 911 should be called if Plaintiff enters the property. Am. Compl. Ex. A. Subsequent exhibits reference a "Restriction of Access Letter," which Plaintiff has not included in the Amended Complaint, requiring Plaintiff to email a specific DHS email

---

[1] Of note, the original Complaint alleged that Plaintiff suffers from PTSD, which is not alleged in the Amended Complaint. Likewise, pragmatic communication disorder and autism were not alleged in the original Complaint.

Page 10 – OPINION & ORDER

address and not to email individual DHS employees. Am. Compl. Ex. B. The attached exhibits do not support a plausible inference that the restriction to email communication was because of Plaintiff's disability.

In sum, the Court concludes that, when viewed against the original Complaint, Judge Potter's F&R does not contain legal error. However, the filing of the Amended Complaint will render the F&R moot. The Court's assessment of Plaintiff's Amended Complaint finds that it is, like the original Complaint, subject to dismissal. The Court concludes that further leave to amend would be futile. Dismissal shall therefore be without leave to amend. The Court has also reviewed Plaintiff's Motion for Scheduling Conference and Request for Judicial Notice, ECF No. 11, and finds that the material submitted is not relevant to the claims in the Amended Complaint. The request for judicial notice is therefore DENIED. Dismissal of the case will render the motion for a scheduling conference moot.

## CONCLUSION

For the reasons set forth above, the F&R, ECF No. 6, is MOOT. Plaintiff's Motion for Scheduling Conference and Request for Judicial Notice, ECF No. 11, is DENIED. The Amended Complaint, ECF No. 8, is DISMISSED without service on Defendants and without further leave to amend. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this  24th  day of June 2026.


                                    /s/Ann Aiken
                                    ANN AIKEN
                                    United States District Judge

Page 11 – OPINION & ORDER